IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DANIELLE MARIE MCCRORY, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 21-0496-WS-B |
| ) | |
| COSTCO WHOLESALE ) | PUBLISH |
| CORPORATION, ) | |
| ) | |
|     Defendant. ) | |

**ORDER**

This action is before the Court on the plaintiff's motion for leave to file a first amended complaint adding a non-diverse defendant. (Doc. 11). The parties have filed briefs in support of their respective positions, (Docs. 16, 19, 22), and the motion is ripe for resolution. First, however, the Court must address the plaintiff's embedded jurisdictional objection.

    **A. Amount in Controversy.**

The defendant removed this action on the basis of diversity of citizenship within the first 30 days after service, in accordance with 28 U.S.C. § 1446(b)(1). (Doc. 1-3 at 1). The Court, on its *sua sponte* review of subject matter jurisdiction pursuant to *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010), questioned the defendant's showing regarding the amount in controversy and required the defendant to supplement its showing or face remand. (Doc. 3). The defendant timely supplemented its original notice with additional information and evidence as to the amount in controversy at the time of removal. (Doc. 4).

The complaint alleges that the plaintiff experienced a slip and fall on the defendant's premises, causing: unspecified physical injuries; undescribed pain and suffering (past and future); undescribed mental anguish (past and future);

medical bills (past and future) of unspecified magnitude; past lost wages of unspecified amount; and lost future ability to earn money, also of unspecified amount. (Doc. 1-3 at 3). The notice of removal relied on these allegations, along with evidence that: (1) the plaintiff's past medical bills exceeded $4,400; (2) her physician identified an anterior cervical discectomy and fusion ("ACDF") as most likely a treatment option; and (3) prior to filing suit, counsel orally demanded $100,000 to settle. (Doc. 1-1 at 3-4; Doc. 1-2 at 2, 7).

The defendant's supplement presented the following additional evidence: (1) in making the $100,000 demand, plaintiff's counsel said it was based in part on the likelihood of an ACDF surgery; (2) in making the demand, counsel stated that the plaintiff would have to take eight weeks off from her job as a dental hygienist to undergo the surgery; (3) the projected cost of the surgery ranges from approximately $47,700 (if only one level) to $82,700 (if two levels); and (4) the local average hourly rate for dental hygienists is $24.23.[1] (Doc. 4 at 3, 5; Doc. 4-1 at 4-5; Doc. 4-2 at 2-3).

Upon review, the Court expressed itself "satisfied that the defendant has met its burden of demonstrating the existence of subject matter jurisdiction." (Doc. 5). The defendant's evidence reflects that the plaintiff's claimed medical expenses are at least $52,112[2] and that her claimed lost future income is at least $7,754.[3] The plaintiff's hard damages, to the extent they are presently calculable, thus come to at least $59,866. Considering the complaint's demand for additional hard damages in the form of past lost wages and future lost ability to earn, its demand for soft damages in the form of pain and suffering[4] and mental anguish,

---

[1] The plaintiff identifies herself as a resident of Mobile County. (Doc. 1-3 at 2).

[2] Past expenses of $4,419 and future expenses of at least $47,693 totals $52,112.

[3] An hourly rate of $24.23 times 40 hours a week times eight weeks totals $7,754.

[4] The plaintiff's submitted medical records, from June to August 2020, reflect consistent complaints of pain, unresolved over two months after the incident, self-

and its demand for punitive damages as well, it is plain that counsel "offer[ed] a reasonable assessment of the value of" the plaintiff's claim in asking for $100,000. *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009) (internal quotes omitted). Under these circumstances, the preponderance of the evidence clearly shows that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs.

The Court's order, entered on December 9, 2021, carefully noted that "[t]his ruling is without prejudice to the plaintiff's ability to seek remand should she believe that other evidence not presently before the Court would undermine the defendant's showing." (Doc. 5). The plaintiff's brief filed January 25, 2022, ostensibly in support of her motion to amend the complaint, instead focuses on the amount in controversy. She argues that: (1) oral settlement demands as a matter of law may not be considered in determining the amount in controversy; (2) settlement demands as a matter of law can never be given more than "little weight"; (3) the plaintiff's physician has not predicted the cost of her surgery; and (4) the defendant has produced no evidence of future medical costs or future lost income. (Doc. 22 at 3-4). The plaintiff is wrong, legally and/or factually, on each point.[5]

The plaintiff identifies no authority for the proposition that oral settlement demands may not be considered in assessing the amount in controversy, and such demands have in fact been considered in other cases. *E.g., Yong Qin Luo v. Mikel*, 625 F.3d 772, 775-76 (2nd Cir. 2010); *Intihar v. Citizens Information Associates, LLC*, 2014 WL 68550 (M.D. Fla. 2014); *Homer v. GMAC Mortgage, LLC*, 2011

---

described as ranging from a low of 5 to a high of 7 on a scale of 1 to 10. (Doc. 4-1 at 7, 9-11, 14, 16-20, 22-26, 29-30, 33-34, 36, 38, 40, 43, 45, 47, 50, 52-53, 55-56, 58, 60, 62, 64, 66, 68, 70, 74-75, 77-79, 81).

[5] The Court addresses the plaintiff's belated arguments only because objections to subject matter jurisdiction cannot be waived. *E.g., Animal Legal Defense Fund v. U. S. Department of Agriculture*, 789 F.3d 1206, 1214 (11th Cir. 2015).

WL 3859719 at *3 (D. Conn. 2011).[6]  The plaintiff's only objection to such consideration is that it would "open the floodgates for all cases becoming federal in nature," allowing defendants to remove "by merely providing … an affidavit of an adjuster claiming an oral demand."  (Doc. 22).  By this, the plaintiff appears to insinuate that defendants would routinely remove based on alleged oral settlement demands that were not in fact made.

The plaintiff takes a dimmer view of the integrity of counsel than does the Eleventh Circuit, or this Court.  Because "[e]very lawyer is an officer of the court[, with] a duty of candor to the tribunal," a state complaint that expressly demands less than $75,000 "deserves deference and a presumption of truth," and "[w]e will not assume – unless given reason to do so – that plaintiff's counsel has falsely represented .. the value of his client's case," even though the effect of such a demand is to preclude removal unless it appears to a legal certainty that the claim is higher than $75,000.  *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  In similar fashion, a court should not assume, unless given reason to do so, that a removing party's assertion of an oral settlement demand is fabricated by, or with the acquiescence of, defense counsel.

The antidote to any false assertion of an oral settlement demand, of course, is an evidentiary denial by counsel.  This would create an ordinary evidentiary dispute, and the plaintiff does not suggest that federal judges are incapable of resolving such disputes appropriately.  There is no evidentiary dispute in this case, because the plaintiff, through her counsel, studiously avoids denying the fact or contents of the oral settlement demand as testified to by the defendant's witness.

---

[6] Whether an oral settlement demand can supply evidence of the amount in controversy is a different question than whether such a demand can satisfy the "other paper" requirement of Section 1446(b)(3) to permit later removal of a case that was not removable when filed.  *See, e.g., Black v. Corporate Transportation, Inc.*, 2019 WL 470906 at *3 (M.D. Ala. 2019) (declining to accept an oral settlement demand as an "other paper").  Since the defendant timely removed under Section 1446(b)(1), no "other paper" argument is or could be implicated in this case.

Instead, she asserts that the "only offer that exists *in writing*" was for $20,000. (Doc. 22 at 1 (emphasis added)).[7]

The plaintiff asserts that this Court in *Jackson* "ordered" that settlement demands "be given little weight" in the jurisdictional analysis. (Doc. 22 at 4). What the Court actually ruled was that settlement offers that "reflect puffing and posturing" are entitled to little weight in measuring the preponderance of the evidence. 651 F. Supp. 2d at 1281. "On the other hand, settlement offers that provide specific information … to support the plaintiff's claim for damages suggest the plaintiff is offering a reasonable assessment of the value of his claim and are entitled to more weight." *Id*. (internal quotes omitted). That is exactly the situation here, where counsel stated that his demand was supported by the need for a specific surgery, with its attendant cost and consequent eight-week loss of the plaintiff's income as a dental hygienist. (Doc. 4-2 at 2-3). *See also Intihar*, 2014 WL 68550 at *1 (applying *Jackson*, counsel's oral demand for $200,000 to settle a defamation action, which explained that the amount demanded was due to the serious nature of the alleged defamatory statements (including criminal conduct), the nature of the plaintiff's community, and the impact of the statements on his business reputation, opportunities and career, of itself established the requisite amount in controversy). Indeed, counsel provided such detail that the defendant was able to present evidence of the probable cost of the surgery and magnitude of lost income, which confirmed the reasonableness of counsel's assessment of the claim's value.[8]

---

[7] The plaintiff offers no evidence of this alleged written demand.

[8] The plaintiff apparently believes that the Court's determination of the amount in controversy hinged on the $100,000 settlement demand. The plaintiff is incorrect. As stated in text, the plaintiff's position that she requires ACDF surgery and that she will lose eight weeks income as a dental hygienist to undergo that procedure, combined with the defendant's evidence regarding medical costs and lost income, establishes by a preponderance of the evidence that she has at least $59,866 in hard damages. Given her demand for additional damages in the form of past lost income, lost ability to earn money, prolonged pain and suffering (confirmed by her medical records), mental

The plaintiff objects that her "medical record says nothing regarding any future medical cost." (Doc. 22 at 3). True, but it does say something regarding her future medical *needs*, in the form of ACDF surgery.[9] Given that asserted need, it was entirely appropriate for the defendant to produce evidence from other sources regarding the cost of such treatment. To the uncertain extent the plaintiff suggests that only a recommending physician is competent to estimate the cost of future treatment, the Court rejects the suggestion as utterly unsupported by authority or reason.

The plaintiff's final objection – that the defendant has "produce[d] no evidence of any future costs of medicals or future lost wages," (Doc. 22 at 4) – is patently incorrect. The estimate of the cost of an ACDF procedure was provided by the declaration of an Alabama orthopedic surgeon with 34 years experience in the field, (Doc. 4-1 at 2-5), and the plaintiff does not even hint that he is incompetent to render such an opinion. The estimate of lost wages derives from the declaration of the defendant's witness that plaintiff's counsel advised that the plaintiff "would have to take eight weeks off from her job as a dental hygienist to undergo surgery," (Doc. 4-2 at 3),[10] and from a website providing average salaries for dental hygienists. (Doc. 4 at 5).[11]

---

anguish, and punitive damages, reasonable extrapolation and judicial experience counsel that the amount in controversy more likely than not exceeds $75,000, irrespective of the plaintiff's six-figure settlement demand. *See Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (courts may use their judicial experience and make reasonable extrapolations in assessing the amount in controversy).

[9] The plaintiff herself declares "the need for" this surgery. (Doc. 22 at 1).

[10] The plaintiff's medical records confirm her employment as a dental hygienist. (Doc. 4-1 at 13, 26).

[11] The Court used the $24.23 figure suggested by the plaintiff from one website, even though the other website to which the plaintiff cited reflects a local average hourly rate of $29.28. Using the higher figure, which would be permissible, would increase the plaintiff's lost income by $1,616.

In summary, the Court correctly concluded from a preponderance of the evidence that the amount in controversy at the time of removal more likely than not exceeded $75,000. The plaintiff's arguments to the contrary are rejected, and her request that the case be remanded, (Doc. 22 at 4), construed as a motion for such relief, is **denied**.

### B. Motion to Amend.

Complete diversity of citizenship existed at the time of removal: the plaintiff is a citizen of Alabama, and the defendant is not. (Doc. 1-1 at 1-2). The sole purpose of the proposed amended complaint is to add Carlos Jesus Nunez, also an Alabama citizen, as a party defendant. (Doc. 11; Doc. 11-1 at 2). The proposed amended complaint does not identify Nunez, but the defendant asserts without contradiction by the plaintiff that Nunez was the manager of the store at which the plaintiff fell. (Doc. 19 at 6).

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Several unpublished Eleventh Circuit decisions, relying on published opinions from other Circuits, set forth a framework for making such decisions. *See Hickerson v. Enterprise Leasing Co.*, 818 Fed. Appx. 880 (11th Cir. 2020); *Reyes v. BJ's Restaurants, Inc.*, 774 Fed. Appx. 514 (11th Cir. 2019); *Dever v. Family Dollar Stores, LLC*, 755 Fed. Appx. 866 (11th Cir. 2018). The defendant relies on these cases as establishing the governing standard, and the plaintiff does not disagree.

The plaintiff's motion is governed by Rule 15, which favors amendment "when justice so requires." Fed. R. Civ. P. 15(a)(2).[12] However, "where the

---

[12] Because the plaintiff sought amendment some 46 days after the defendant filed its answer, (Doc. 1-3 at 14; Doc. 6), amendment as a matter of course under Rule 15(a)(1) was precluded.

amended pleading would name a new non-diverse defendant in a removed case, the district court should more closely scrutinize the pleading and be hesitant to allow the new non-diverse defendant to join." *Reyes*, 774 Fed. Appx. at 517.  This is necessary "because justice requires that the district court also balance the defendant's interests in maintaining the federal forum" it has properly invoked due to the parties' complete diversity.  *Dever*, 755 Fed. Appx. at 869.  Thus, in "deciding whether to permit joinder of a party who would defeat complete diversity[,] a court should conder the following factors:  (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities." *Hickerson*, 818 Fed. Appx. at 885 (internal quotes omitted); *accord Reyes*, 774 Fed. Appx. at 517; *Dever*, 755 Fed. Appx. at 869.

### 1. Purpose.

The underlying incident occurred on or about June 5, 2020.  (Doc. 1-3 at 3).  The complaint was filed in state court on October 4, 2021.  (*Id*. at 2).  The plaintiff purported to sue fictitious defendants, but she described them only generically as those "whose fault caused or contributed to the injuries sustained by the Plaintiff." (*Id*.).  Because suit was filed eight months before the two-year limitations period expired, it is plain that counsel was not forced to file suit without adequate time to investigate and determine the job title, actions and perhaps name of any individual that might be culpable.  The plaintiff, however, neither identifies any actions she took to do so nor explains why she filed suit without doing so.  Moreover, store managers are frequently named as defendants in slip-and-fall cases, yet the case style does not identify such an obvious target as a fictitious defendant.  The implication is that the plaintiff did not form an intention to sue the store manager until after the case was removed.

A post-removal intention to sue a non-diverse defendant might not indicate a purpose to defeat federal jurisdiction if discovery has provided previously unavailable information relevant to the decision. Here, however, no discovery has taken place,[13] and the plaintiff claims no recent revelation that the defendant has a store manager or that he might have engaged in culpable conduct. "Especially where … a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999).[14]

Indeed, the proposed amended complaint is devoid of any allegation, even a general one, regarding what Nunez did or failed to do that caused or contributed to the plaintiff's fall. The implication is that Nunez is named, not because the plaintiff is aware of some misconduct on his part, but because he is an Alabama citizen.

There is more. The plaintiff states without explanation that the reason she seeks to amend the complaint is that she "can only meet her burden of proof by adding Carlos Jesus Nunez as a Defendant in this case." (Doc. 11 at 1). For this statement to be true, the plaintiff must be either admitting she has no case against the defendant but only against Nunez or suggesting she cannot prove her case against the defendant unless Nunez is named as an additional defendant. Neither proposition is colorable.[15] Offering a plainly incorrect explanation for naming a

---

[13] The plaintiff issued discovery requests in state court, but the defendant served only objections. (Doc. 1-3 at 6-10, 20-24). No discovery has taken place in federal court, because no preliminary scheduling order has been entered or Rule 26(f) report filed.

[14] *Hickerson* and *Dever* both cite *Mayes*.

[15] Because the plaintiff does not expressly deny that she has a viable claim against the defendant, the Court assumes that is not her position. Moreover, if she has a claim against Nunez as store manager, as she insists, she almost certainly has a claim against the defendant as his principal. *E.g., Wright v. Cleburne County Hospital Board, Inc.*, 255

9

non-diverse defendant after removal further suggests that the real purpose in naming him is to obtain remand to state court.

In addition, the plaintiff did not alert the Court that adding Nunez as a defendant would require remand. That the plaintiff "failed to inform the court such joinder would destroy diversity" indicates the plaintiff's purpose is one of defeating federal jurisdiction. *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009).[16]

Finally, there is the matter of timing. The defendant finds it suspicious that the plaintiff waited until after the Court had confirmed the amount in controversy before filing an amended complaint. (Doc. 19 at 6). The plaintiff does not deny that she could have sought amendment sooner; instead, she responds that she properly awaited the Court's ruling because she could not obtain summons as to Nunez until the Court confirmed its jurisdiction and that she sought to amend her complaint promptly after that ruling. (Doc. 22 at 3). No known legal principle, however, precludes a motion to add a party unless the plaintiff can at that time obtain a summons as to the proposed new party. Thus, the plaintiff's delay in seeking amendment suggests that she awaited the Court's jurisdictional ruling in order to see if the case would be remanded without need of adding a non-diverse defendant to obtain that result. *Cf. Bailey*, 563 F.3d at 309 (that the plaintiff

---

So. 3d 186, 191 (Ala. 2017) ("It is axiomatic that an employee acting in the line and scope of his employment may, in the course of doing so, violate a duty owed by the employee individually to a specific third party," in which case "he may be sued in his individual capacity, even as his employer may simultaneously be vicariously liable under the doctrine of respondeat superior"). And a party need not sue the agent in order to hold the principal liable, under either vicarious liability or joint tortfeasor principles. *E.g.*, 3 C.J.S. Agency § 523 (online ed. 2021) ("Injured plaintiffs are not required to sue both principal and agent to recover from the principal under respondeat superior; plaintiffs have the choice to sue either the agent or principal or join both."); *id.* ("If tortious acts are committed by the agent within the scope of an agency, both the principal and agent are joint tortfeasors; the injured party is not obligated to join both tortfeasors and may sue either singly.").

[16] *Bailey* was cited by *Hickerson* and *Dever*.

moved to remand less than a month after obtaining joinder of non-diverse defendants supported the conclusion the new defendants were joined primarily for the purpose of defeating federal jurisdiction).

### 2. Dilatoriness.

"A plaintiff is dilatory in adding a non-diverse party when the plaintiff waits an unreasonable amount of time before asking for an amendment, despite having been able to ascertain the party's role in the suit all along." *Hickerson*, 818 Fed. Appx. at 886.  In *Hickerson*, the plaintiffs knew the non-diverse defendant at the time of the subject accident, since he was the driver of the vehicle in which they were passengers and since he was their relative. *Id*. at 881.  By its terms, however, the standard for dilatoriness announced in *Hickerson* extends to unreasonable failures to identify a potential defendant whose identity was unknown initially.  Moreover, the *Hickerson* Court relied on *Osgood v. Discount Auto Parts, LLC*, 955 F. Supp. 2d 1352 (S.D. Fla. 2013), in which the plaintiff knew only the non-diverse defendant's first name at the time of the subject incident but "likely could have ascertained the identity of the employee earlier than he did." *Id*. at 1356.[17]

---

[17] A number of lower courts weighing the dilatoriness factor – most of them decided before *Hickerson* – have focused on the extent of delay post-removal or the extent of delay post-complaint. *E.g., Portis v. Wal-Mart Stores, Inc*., 2007 WL 3086011 at *3 (S.D. Ala. 2007).  The Court rejects these approaches as inconsistent with the *Hickerson* standard, which expressly looks back to the entire period since the incident giving rise to a cause of action.  Indeed, the *Hickerson* Court explicitly rejected the plaintiffs' argument that their swift motion for leave to amend – filed 15 days after removal – showed their diligence.  Given their previous awareness of the non-diverse defendant's identity and role, their post-removal motion to amend affirmatively "undermine[d] the[ir] suggestion of diligence." 818 Fed. Appx. at 886.  Even absent *Hickerson*, the Court would be skeptical of an approach under which a prompt post-removal motion to amend would simultaneously suggest both a purpose to evade federal jurisdiction (disfavoring amendment) and diligence in seeking amendment (favoring amendment).

In *Nichols v. Circle K Stores, Inc.*, 2021 WL 2815973 (S.D. Ala. 2021), the plaintiff sued for a trip and fall some 21 months after the incident but did not seek to add a non-diverse defendant (the person in charge of the store) until a month later – five days after the defendant timely removed the action. *Id*. at *1. Quoting *Hickerson*, the *Nichols* Court concluded the plaintiff had been dilatory because she failed to explain why, in the extended time since the incident, she had not previously identified the proposed defendant or her role. *Id*. at *2. Here, the plaintiff moved to add Nunez almost 19 months after the underlying incident, yet she offers no explanation for her failure to identify him or his role, despite his readily identifiable position as store manager, for that prolonged period. As in *Nichols*, "[t]he court finds that in this instance, her delay is unreasonable and therefore dilatory." *Id*.[18]

### 3. Injury.

Plaintiffs generally argue they will be significantly injured if amendment is disallowed either because the non-diverse proposed defendant is essential to their ability to obtain complete recovery or because the plaintiff will be put to additional expense and inconvenience in pursuing two lawsuits. The plaintiff does not invoke the latter argument, and in any event, "[b]eing made to litigate against [the non-diverse defendant] in state court does not necessarily amount to a significant injury – even if it results in duplicative efforts on the plaintiff['s] part …." *Hickerson*, 818 Fed. Appx. at 886.

Instead, the plaintiff relies only on her unexplained, unadorned assertion that Nunez is "an indispensable party." (Doc. 22 at 3, 4). Plainly, he is not. An indispensable party under Rule 19(b) must first be a necessary (or required) party under Rule 19(a). *E.g., Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d

---

[18] *See also Bailey*, 563 F.3d at 309 (the plaintiff's failure to show that he ever attempted to determine the residences of his proposed non-diverse defendants after he knew who they were supported the conclusion he was dilatory in moving to amend).

1008, 1039 (11th Cir. 2014). A person is a necessary party only if, "in that person's absence, the court cannot accord complete relief among existing parties," or if "that person claims an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1). As to the latter, the plaintiff does not make the facially implausible suggestion that Nunez claims an interest relating to the subject of this action.

As to the former potential basis of necessary-party status, "[i]t has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Under Rule 19, "a tortfeasor with the usual joint-and-several liability is merely a permissive party to an action against another with like liability." *Id*. (internal quotes omitted). The proposed amended complaint simply adds Nunez's name to the existing complaint and both of its causes of action, which assert that the defendants were negligent and wanton. (Doc. 11-1 at 3-4). The plaintiff thus identifies Nunez as nothing more than "a routine joint tortfeasor," *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999), negating his status as a necessary, much less indispensable, party. "[B]ecause [the plaintiff] alleged the parties were joint tortfeasors, [he] will not be significantly injured if amendment is not allowed." *Bailey*, 563 F.3d at 308, 309; *see also Hickerson*, 818 Fed. Appx. at 884 n.6 (a non-diverse driver was not a necessary party, "because his absence would not preclude complete relief between the parties"); *Reyes*, 774 Fed. Appx. at 517 (this factor weighed against the plaintiffs when there was no reason they could not obtain complete relief against the existing defendant without adding new ones).[19]

---

[19] To the uncertain extent the defendant's ability to pay a judgment is relevant to the analysis, the plaintiff does not suggest that the defendant is financially incapable of doing so.

13

### 4. Other factors.

Neither party points to any additional factors the Court should consider in its analysis.

### 5. Summary.

The record strongly indicates that the primary purpose of the plaintiff's motion is to defeat federal jurisdiction, that the plaintiff has been dilatory in naming Nunez as a defendant, and that she will not be significantly prejudiced by denial of her motion. The plaintiff has offered only perfunctory argument in opposition to these conclusions. Accordingly, the Court exercises its "broad discretion" against amendment. *Hickerson*, 818 Fed. Appx. at 885.

## C. Conclusion.

For the reasons set forth above, the plaintiff's motion for leave to file a first amended complaint is **denied**.

DONE and ORDERED this 7th day of February, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE